CLARK ET AL. v. DREYER ET AL.

1. REPLEVIN BOND—LIABILITY OF SURETIES.

Plaintiff got possession of goods under a writ of replevin. Judgment as originally entered was in favor of the defendant for costs. Afterwards the defendant, without notice to the sureties on the replevin bond, moved for and obtained a judgment, *nunc pro tunc*, for the return of the property or its value at a sum found. *Held,* that the sureties on the bond must respond under the *nunc pro tunc* judgment.

2. SAME.

Whenever sureties obligate themselves to the performance of an act which is dependent on judicial proceedings, the liability is assumed with reference to the power of the court to do any and all things within the scope of its authority which may be done in the ordinary and regular prosecution of the suit.

3. SAME—PLEADINGS AND EVIDENCE.

The pleadings and proofs in this case are considered and held to be sufficient to put the defendants upon their proof if they desired to contest the execution and delivery of the replevin bond.

*Appeal from the County Court of Arapahoe County.*

Messrs. McINTYRE, BRAY & JARVIS, for appellants.

Mr. R. T. CASSELL, for appellees.

BISSELL, J., delivered the opinion of the court.

This is probably the final chapter in the history of a litigation which commenced in 1891. Wolaver, the sheriff of Weld county, seized some property belonging to one Schmidt. After he had taken possession, Eliza Schmidt, the judgment debtor's wife, brought suit in replevin for the property against Wolaver, and the judgment plaintiff, Dreyer, claiming it under a chattel mortgage which had been executed to secure a debt. The property was taken under the writ and delivered to Mrs. Schmidt. At the time process was sued out, Clark and Koch executed an undertaking as provided by statute, which in the usual form recited that the defendants had possession of certain named property, consisting of cows, heifers and steers, of the value of $700. The undertaking bound the obligors to the sum of $1,400, for the prosecution of the action with effect, and for the return of the property to the defendant, if return thereof be adjudged, and likewise to pay whatever sum of money should be recovered against the plaintiff. This replevin suit was tried in the county court of Arapahoe county, and resulted in a judgment in favor of the defendants. From that judgment the plaintiff prosecuted an appeal to the district court. The appeal was subsequently dismissed, and when the cause came again to the county court Mrs. Schmidt attempted to pay the judgment as it had been entered, and avoid any further responsibility as to herself or bondsmen with reference to that judgment. This is the occasion of the present appeal. When the judgment was originally entered in the replevin suit in the county court, the record shows the entry was simply for the defendants and for their costs. After the plaintiff had thus attempted to dispose of the case, and some years after the entry of the original judgment, the defendants filed a motion to correct the judgment entry, and have it recite a judgment substantially that the property should be returned, or its value paid, which was $700. After the decision of this motion, in which the county court ordered its judgment

amended, and suit was begun to enforce it, Mrs. Schmidt sought to restrain the county court from further proceeding in the premises. This matter came on to be heard and resulted in an adverse judgment, from which an appeal was taken to this court. The cause was reviewed, and the judgment of the district court, which held the proceedings in the other tribunal regular, was affirmed. This case is reported in this volume on page 41, to which reference can be made if parties desire to further follow up the history of this litigation. After the writ of prohibition was denied, and about a year ago, the obligees in the undertaking brought suit thereon in the county court to enforce the liability resulting from the failure to return the property or to pay its value, which, of course, was fixed by the bond and *nunc pro tunc* judgment at $700. No substantial defense was interposed other than what arose, if at all, from the amendment of the original judgment from one simply for costs to one in the alternative to return the property or pay its value. When the parties attempted to prove their case, various objections were offered to the introduction of the amended record. The original record was offered by the defendants.

The only question suggested or urged in the argument is as to the liability of the sureties to respond according to the terms of their undertaking, when the only evidence of the breach rests on proof of the amended judgment, the demand for the delivery of the property, and the failure to surrender it. The theory of the appellants is that the sureties cannot be made liable because the original judgment did not provide for the return of the property nor award any money judgment against the plaintiff, and the court, in amending its judgment, did that which would release the sureties from their responsibility, or did that from which no liability against them would arise, and that they were entitled to notice of what was to be done, that they might resist it if the obligees would make them respond according to the terms of their obligation. We are unable to appreciate the force of these objections. According to the terms of the undertaking, the

sureties bound themselves to return the property which was seized on the writ, if its return should be awarded, or pay whatever money judgment should be entered if the return was not had. This was their promise, and nothing whatever is sought to be enforced against them except the contract into which they voluntarily entered. The force and effect of the *nunc pro tunc* judgment as against the sureties seems to us precisely the same as would have been the force and effect of the judgment had the record entry originally re-cited that it was for the return of the property or the pay-ment of its value. Their liability has in no way been enlarged or increased, varied or altered, but they are now simply called on to do that which they agreed to perform, to wit, return the property or pay its value, if the plaintiff in the replevin suit should fail to prosecute it with effect, or, the return be-ing adjudged, should fail to redeliver the property. The judgment against them simply compels the performance of their agreement. The judgment is in no wise changed, be-cause, as we held in the case of *Schmidt v. Dreyer and Wo-laver*, and as the court below found, the original judgment did provide for the return of the property or the payment of its ascertained value. We have been referred to no case which directly determines this question. A case is cited from Missouri (*Koch v. The Atlantic & Pacific R. R. Co.*, 77 Mo. 354), which undoubtedly holds the obligee on an appeal bond may not recover against the obligors for the amount of the judgment as it was fixed by a *nunc pro tunc* entry. In that case a judgment was rendered against a party for the value of property killed by the railroad company, and the judgment was entered for $50.00. According to the statute the plaintiff was entitled to recover double that amount, the additional sum being in the nature of a penalty for the act. After the judgment was entered for $50.00, an appeal was taken to the supreme court, and a bond given to stay the execution. Subsequently the judgment was cor-rected, so that it was for $100 in place of $50.00. We do not regard this case as at all similar to the present, or con-

clusive on this hearing. The sureties on the appeal bond simply promised and agreed that the railroad company should pay the judgment of $50.00 in case it should be affirmed. There was a specific promise and undertaking as to a definite judgment. In the present case the undertaking which the sureties executed fixed their liability, and their promise was to either return the property or pay its value. The property was named in the undertaking, and that specific property was to be returned. The amended judgment in no manner enlarges or changes the liability assumed by the obligors; it simply puts in definite form the judgment which the court entered, whereby the obligees are entitled to enforce the undertaking. It has often been held that sureties are liable for whatever is done in court in the natural and regular proceedings in the tribunal where the case may be pending, and that they are liable on their promise regardless of the orders which the court may make in the premises. There is always an implied understanding that judicial proceedings shall be conducted according to the provisions of law relating to it, and whenever sureties obligate themselves for the performance of an act which is dependent on judicial proceedings, their liability is assumed with reference to the power of the court to do any and all things which are within the scope of its authority, and which may be done in the ordinary and regular prosecution of the suit. The sureties would have been liable if the original judgment had recited that the property was to be returned or its value paid. This was the judgment, although it was not the entry. If the judgment had been in the original form, and afterwards and during the term the attention of the court had been called to the mistake of the clerk and the judgment had been corrected, there is little doubt the sureties would have conceded they were liable in case of its ultimate affirmance. We can see no difference between that situation and the present. It was the judgment of the court that the property should be returned or its value paid, and the effect of the *nunc pro tunc* order is simply to make the entry recite the actual judgment, and

this in no manner varies or alters the promise of the obligors, who are now simply called on to do that which they agreed to perform in case such judgment was entered. *Jamieson v. Capron*, 95 Pa. St. 15 ; *Hocker v. Woods' Executor*, 33 Pa. St. 466 ; *Hershler et al. v. Reynolds et al.*, 22 Iowa, 152 ; *Wells v. Griffin & Co.*, 2 Head, 568.

The appellants further insist that the sureties should not be bound because of the possible change that may have occurred in the condition of the parties, and in the status and situation of the property. It is urged with a good deal of force and some slight reason that the liability of the sureties on a bond of this description is not a continuing one, so that the sureties may be made liable, if it appear that by reason of the misprision of the clerk and the correction of the judgment the property has passed from the possession of the plaintiff in the replevin suit, has been lost or dissipated, and Mrs. Schmidt has in the meantime become insolvent, whereby, in the event of any of these suggested contingencies, the liability of the sureties has been increased or enlarged, and they are called on to respond under circumstances which should exonerate them from their responsibility. The answer to this argument simply is that no such plea has been interposed. The sureties rest their entire defense on the simple basis that the court is powerless to correct the judgment and thereby make the sureties liable on the bond, when by the terms of the original judgment entry they incurred no liability save for costs, which the plaintiff paid, and to that extent relieved them. We are not prepared to say, because no such case is laid before us, what we might hold with reference to this matter if the sureties had pleaded that the property had been sold, lost, dissipated or made away with, and the plaintiff in the replevin suit had become insolvent and the liability of the sureties had been enlarged or increased. No such question is before us. We are without the right, nor are we inclined to presume that the liability of the sureties was in any wise varied by the correction of the judgment entry. The judgment which the court announced

provided for the return of the property or the payment of its ascertained value, and there was thereby imposed on the sureties only the liability which they assumed when they signed the bond. The corrected judgment accomplished only that result. They have not pleaded that they have been harmed thereby, and we therefore conclude there is nothing in the record which should be taken to relieve them of their responsibility.

Considerable stress is laid in the argument on the lack of proof of the due execution and delivery of the bond. The plaintiff is sometimes bound to make proof of the execution and delivery of an instrument upon which he basis his action. He is also sometimes relieved from either duty by reason of the condition of the pleadings and the character of the instrument sued on. The code provides that in all actions on written instruments, where a copy of it is set out in the complaint and verified, the execution and genuineness of the paper is admitted, unless it be denied under the oath of the defendant. The answer of the defendants was a joint one by the plaintiff in the replevin suit and the two sureties, and contained a general denial of all allegations not admitted in the answer. If the answer had been only a general denial, we should then have been compelled to determine whether such a denial is enough to raise an issue as to the execution and genuineness of the paper, if properly verified. Whether a general denial is a compliance with this statutory provision we need not determine, because the answer proceeds to make certain admissions which we conclude destroys the effect of the general denial in so far as relates to the execution and genuineness of the paper sued on. The defendants admit that Mrs. Schmidt brought a replevin action in the court against the defendants, and that the action was a particular No. 15,227. They admit that that case was tried on its merits and final judgment entered on it, and was the only case of that number and between these parties ever brought or decided in that court. The answer proceeds to aver a payment and satisfaction and a compliance with the orders

of the court, and states that it was in action No. 15,227 that the bond or undertaking sued on is alleged to have been filed, and the defendants testify that the conditions of the undertaking have been complied with in every respect and particular according to the records of the court. When these facts are considered, together with the proof which was made by the production of the undertaking which the file marks show was filed as a part of the records of that particular case, in that particular court, we must adjudge that the admissions in the answer, coupled with this proof, were sufficient evidence of execution and delivery to put the defendants to their proof if they desired to contest the execution and delivery of the instrument. *Holmes v. Ohm et al.*, 23 Cal. 268; *Tidball v. Halley*, 48 Cal. 610; *Parrott v. Scott et al.*, 6 Mont. 340.

When it is evident, as it is in this case, that there was no issue intended to be raised by the defendants respecting the execution and delivery of the instrument, that the whole defense which they made, or which they attempted to make, was based on the character of the erroneous entry and its subsequent satisfaction, we have the right to indulge in any reasonable presumptions which may be necessary to sustain a judgment which we believe to be just. We discover no error in the record, the judgment is right, and it will therefore be affirmed.

*Affirmed.*